IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-653

 No. COA20-446

 Filed 7 December 2021

 Cumberland County, No. 18 CVS 5727

 ELIZABETH ANN CLARK, Plaintiff,

 v.

 ADAM MATTHEW CLARK and KIMBERLY RAE BARRETT, Defendants.

 Appeal by Defendant from judgment entered 17 September 2019 and order

 entered 30 October 2019 by Judge Mary Ann Tally in Cumberland County Superior

 Court. Heard in the Court of Appeals 12 May 2021.

 The Charleston Law Group, by Jose A. Coker and R. Jonathan Charleston; The
 Michael Porter Law Firm, by Michael Porter, for Plaintiff-Appellee.

 Tharrington Smith, LLP, by Jeffrey R. Russell and Evan B. Horwitz, for
 Defendant-Appellant.

 WOOD, Judge.

¶1 On September 17, 2019, a jury found Defendant, Kimberly Barrett,

 (“Defendant Barrett”) liable for intentional infliction of emotional distress (“IIED”)

 and alienation of affection. Post-trial, Defendant Barrett filed a motion for judgment

 notwithstanding the verdict (“JNOV”), which was denied. On appeal, Defendant

 Barrett contends the trial court erred in admitting expert witness testimony; allowing

 Plaintiff, Elizabeth Clark, (“Plaintiff”) to proceed with her IIED claim; and denying
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

 her motion for JNOV. After careful review of the record and applicable law, we

 conclude there was no error at trial and affirm the trial court.

 I. Factual and Procedural Background

¶2 Plaintiff married Defendant, Adam Clark, (“Defendant Clark”) on April 3,

 2010. At the time of their marriage, Defendant Clark held the rank of Captain in the

 United States Army. In or around May 2012, Plaintiff placed a personal

 advertisement on the website Craigslist, through which she met a man with whom

 she had a sexual affair. Plaintiff’s extramarital affair lasted approximately ten

 months.

¶3 Plaintiff testified Defendant Clark was unaware of her affair, and the couple

 remained together and attended several “marriage retreats” provided by the Army.

 During these retreats, Plaintiff and Defendant Clark completed “exercises of trying

 to open up to your spouse, reconnect[ing] . . . . [T]hey go into forgiveness of things.”

 The couple “wrote each other letters on trying to put the past behind [them] and move

 forward, how much [they] really loved each other.” Thereafter, the couple procreated

 two children in 2014 and 2015, respectively.

¶4 In the spring of 2016, Defendant Clark attended a training at Fort Belvoir,

 Virginia. While staying at Fort Belvoir, Defendant Clark met Defendant Barrett, a

 Lieutenant Colonel in the Army and a staff obstetrics and gynecology physician. At

 the time Defendants Clark and Barrett met, Defendant Barrett knew Defendant
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

 Clark was married, but felt Defendant Clark “did not have a good relationship” with

 his wife.

¶5 While at Fort Belvoir, Defendants Clark and Barrett resided in barracks. The

 barracks were “like a U shape and it was two floors and [Defendants Clark and

 Barrett] were [in] the same . . . building, but [Defendant Barrett] was down on the

 other end.” While attending their training, Defendants Clark and Barrett spent time

 “all alone in each other’s rooms.”

¶6 Defendant Barrett testified that her relationship with Defendant Clark started

 by Defendant Clark “helping [her] with homework or papers. Sometimes [she] had

 questions. There is a lot of acronyms in the—field, but in the military, there are a lot

 of acronyms that [she] wasn’t familiar with.” After Defendants Clark and Barrett

 met each other, Plaintiff “notice[d] a little bit of change” in her husband. Defendant

 Clark did not travel home to North Carolina to visit and “wasn’t texting [Plaintiff] as

 often. One time [Plaintiff] couldn’t get ahold of him and [she] tried calling his hotel

 room, [but he] wouldn’t pick up when he was supposed to be in there . . . . He was

 short with [her] on the telephone.” Because of the changes she noted in Defendant

 Clark’s behavior, Plaintiff used her cellphone to “trace or track” Defendant Clark’s

 cellphone, during which time Defendant Clark’s phone was “showing a different

 location from where his room was at.” Defendant Clark’s phone was “pinging . . . from

 the other end of the hall,” from where Defendant Barrett’s room was located.
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

¶7 On or around July 4, 2016, Defendant Clark traveled home to North Carolina

 for Independence Day. While he was home, Plaintiff discovered he “was texting a

 female. [She] found a number in his phone.” When Plaintiff asked Defendant Clark

 who the female was, he replied, “I don’t know what you’re talking about.” Finding

 the phone number caused Plaintiff “a lot of emotional distress.” The couple argued,

 and Plaintiff experienced “stroke-like symptoms” and went to the hospital for

 treatment. Plaintiff was ultimately diagnosed with “[m]igraines and stress.”

 Defendant Clark returned to Fort Belvoir the same day Plaintiff was hospitalized.

¶8 In September 2016, Plaintiff discovered text messages between Defendants

 Clark and Barrett, in which Defendant Clark sent Defendant Barrett a picture of his

 penis. The picture sent was taken in a bathroom in Plaintiff and Defendant Clark’s

 home. At the time Plaintiff discovered the sexually explicit photograph, Defendant

 Clark had changed Defendant Barrett’s name in his cellphone’s contact information

 to “Jane S.” Plaintiff knew “Jane S.” was Defendant Barrett because she had matched

 the cellphone number of “Jane S.” with that of Defendant Barrett.

¶9 On September 11, 2016, Plaintiff confronted Defendant Clark and asked if he

 “still had [Defendant Barrett’s] number.” Plaintiff threatened to call Defendant

 Barrett, and Defendant Clark “jumped up really fast and chased after [Plaintiff] as

 [Plaintiff] was dialing [Defendant Barrett’s] number.” Plaintiff threatened to ask

 Defendant Barrett if she and Defendant Clark were having an extramarital affair.
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

 Because of this interaction, the couple fought, and Defendant Clark left their marital

 home.

¶ 10 Although Defendant Clark left the marital home in September 2016, the couple

 maintained an emotionally and sexually intimate relationship. Plaintiff testified, “It

 was very complicated, because he would keep coming over . . . . And he was holding

 me and we had sex a couple of times.” In January 2017, Plaintiff and Defendant

 Clark purchased real property together. The property the couple purchased was

 owned by a close family friend of Plaintiff’s, whom she knew through her father.

 Ultimately, the loan obtained to purchase the land was put in Defendant Clark’s sole

 name, because Plaintiff “didn’t really have any kind of credit or anything like that.”

 At the time the real property was purchased, Defendant Clark and Plaintiff “were

 actually reconciling at that time. And [Defendant Clark] told Plaintiff that . . . [they

 were] going to still build a house on it.” At the time of trial, Defendants Clark and

 Barrett had built a house on the land and were residing on this property together.1

¶ 11 In March 2017, Plaintiff and Defendant Clark executed a separation

 agreement, in which Defendant Clark agreed to pay $1,850 in monthly child support.

 1Defendant Barrett testified she moved into the house built on the property in
 “November or December of 2018.” Testimony at trial further suggests Defendants Clark and
 Barrett began living together in 2017. Specifically, Defendant Barrett stated she lived
 independently for approximately four months beginning in August 2017. When asked where
 she resided afterwards, Defendant Barrett utilized her Fifth Amendment privilege.
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

 The separation agreement was drafted by Defendant Clark’s attorney, and Plaintiff

 was not represented by independent counsel at the time of its execution.

¶ 12 Throughout June and July 2017, Plaintiff and Defendant Clark engaged in

 sexual intercourse and recorded videos of themselves doing so. Also in July 2017,

 Defendant Clark and Defendant Barrett conceived a child together through in vitro

 fertilization. Defendant Clark continued to maintain an intimate and sexual

 relationship with both his wife and with his paramour during this time. In August

 2017, Defendant Clark traveled to Boston, Massachusetts for additional training.

 Plaintiff attempted to videocall Defendant Clark through Facetime, but Defendant

 Clark did not answer. When Defendant Clark did not answer, Plaintiff “sent him a

 topless photo,” in which Plaintiff’s naked breasts were exposed. Plaintiff did not send

 the topless photograph to anyone else.

¶ 13 In September 2017, Plaintiff and Defendant Clark stopped having sexual

 intercourse. Around this time, Defendant Clark began complaining about the amount

 he paid to Plaintiff in child support. In October 2017, Plaintiff and Defendant Clark

 were still texting one another, and Plaintiff sent Defendant Clark “a picture of female

 genitalia.” It was around this time that Plaintiff discovered Defendant Barrett was

 pregnant with Defendant Clark’s child.2

 2 Defendants Clark and Barrett had a child together on March 7, 2018. Defendant

 Clark is listed as the child’s father on the birth certificate, and the child bears his last name.
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

¶ 14 In January 2018, Plaintiff discovered a Craigslist advertisement and believed

 it to be about herself. The advertisement stated,

 Liz is super hot! Shows you what plastic surgeons and
 eating disorders can do for you in 2018. There’s a reason
 she’s been divorced twice and can’t take care of her kids.
 She’s a plaything, nothing more. Hope you fellas are
 wearing condoms, she’s got herpes.

¶ 15 Plaintiff believed Defendant Clark posted the advertisement, because he

 “always said [she] had an eating disorder and when [they] started not getting along,

 he said that [she] didn’t take care of [her] children and [she] was a bad mother.”

¶ 16 In March 2018, Plaintiff began interacting with Defendant Clark, who was

 using the alias “Brian Bragg” on the social networking platform, Kik.3 The Brian

 Bragg4 account sent Plaintiff the “topless photo,” with a message saying, “Saw this

 floating around the internet in the Fayetteville chat rooms just letting you know.”

 Brian Bragg also informed Plaintiff that the image was “all over the place,” and that

 he hoped Plaintiff “[slept] well knowing [her] fun bags [were] hanging out there for

 the world to see.”

¶ 17 In May 2018, Plaintiff discovered a Facebook “weight loss” advertisement

 depicting Plaintiff. The advertisement was composed of a post-pregnancy photograph

 3 When asked if Defendant Clark used the alias “Brian Bragg,” Defendant Clark pled

 the Fifth Amendment.
 4 Plaintiff believed “Brian Bragg” was Defendant Clark, as the “Brian Bragg” account

 used a photograph that Plaintiff took of Defendant Clark as a profile picture.
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

 of Plaintiff next to the photograph of Plaintiff’s nude breasts. Prior to Plaintiff finding

 the advertisement, “Brian Bragg” had threatened to find and post Plaintiff’s post-

 pregnancy photographs on Kik.

¶ 18 Throughout 2018, Plaintiff’s friends and co-workers contacted her when they

 saw “Liz Clark” profiles, using a photograph of Plaintiff as a profile picture, in Kik

 chatrooms soliciting “no strings attached sex.” Kik business records revealed that

 the “Liz Clark” Kik profiles could be traced to an IP address that matched the IP

 address of Defendants Clark and Barrett’s residence.

¶ 19 When Plaintiff’s friends and co-workers notified her that they saw the “Liz

 Clark” Kik profiles, she “was extremely embarrassed” and her “heart started racing.”

 Plaintiff also received photographs from “Brian Bragg” depicting herself and her

 vehicle. Attached to these photographs were messages discussing how people were

 following Plaintiff. One message from “Brian Bragg” stated, “We are going to

 continue doing everything in our power to make your life miserable.”

¶ 20 In August 2018, Plaintiff brought the instant action, asserting claims against

 both Defendants Clark and Barrett for libel per se; intentional and negligent infliction

 of emotional distress; and a violation of N.C. Gen. Stat. § 14-190.5A, a statute

 providing criminal sanctions for what is commonly known as “revenge porn.” Plaintiff

 asserted additional causes of action against Defendant Barrett for alienation of

 affection and criminal conversation. In April 2019, Defendant Clark was arrested for
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

 stalking and cyberstalking Plaintiff in violation of N.C. Gen. Stat. §§ 14-277.3(A)(c)

 and 14-196.3.

¶ 21 In July 2019, the Cumberland County Superior Court barred the use of expert

 witness testimony in the civil actions filed by Plaintiff based upon a motion filed by

 Defendants Clark and Barrett to strike Plaintiff’s tardy designation of an expert

 witness. The case proceeded to trial in August 2019. During trial, Derek Ellington

 (“Ellington”) was permitted to testify. Ellington is a digital forensics examiner in

 Cumberland County. During Ellington’s testimony, he laid the foundation for the

 entry of a flash drive containing nearly 32,000 files that he preserved from Plaintiff’s

 electronic devices, and social media and email accounts. The data Ellington gathered

 and saved demonstrated that Plaintiff had only sent the “topless photo” of herself to

 Defendant Clark.

¶ 22 The jury found Defendant Barrett responsible for alienation of affection and

 IIED. The trial court entered judgment against Defendant Barrett for alienation of

 affection and IIED on September 17, 2019. Plaintiff was awarded $1,200,000 in

 damages. On September 25, 2019, Defendant Barrett filed a motion for judgment

 notwithstanding the verdict (“JNOV”) and, in the alternative, motion for new trial.

 The court denied Defendant Barrett’s motion on October 30, 2019. Defendant Barrett

 appeals from both the September 17, 2019 judgment and the October 30, 2019 order

 denying her post-trial motion.
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

 II. Discussion

¶ 23 Defendant Barrett raises several issues on appeal. Each will be addressed in

 turn.

 A. Ellington’s Testimony

¶ 24 Defendant Barrett contends the trial court erred “by admitting evidence and

 testimony from an expert witness who was not qualified as such.” We disagree.

 1. Standard of Review

¶ 25 As a preliminary matter, the parties dispute the proper appellate standard of

 review. Defendant Barrett asks this Court to review the admission of Ellington’s

 testimony de novo, because “[w]here the plaintiff contends the trial court’s decision is

 based on an incorrect reading and interpretation of the rule governing admissibility

 of expert testimony, the standard of review on appeal is de novo.” Cornett v. Watauga

 Surgical Grp., P.A., 194 N.C. App. 490, 493, 669 S.E.2d 805, 807 (2008) (citations

 omitted). Conversely, Plaintiff contends the appropriate standard of review is one of

 an abuse of discretion. Rule 104(a) of our rules of evidence provides that “preliminary

 questions concerning the qualifications of a person to be a witness, the existence of a

 privilege, or the admissibility of evidence shall be determined by the court.” N.C. Gen.

 Stat. § 8C-1, Rule 104(a) (2020). Decisions made under Rule 104(a) are addressed to

 the sound discretion of the trial court. See State v. Fearing, 315 N.C. 167, 174, 337

 S.E.2d 551, 554 (1985).
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

¶ 26 After careful review of the applicable law, we review de novo whether Ellington

 testified as an expert witness. See State v. Broyhill, 254 N.C. App. 478, 488, 803

 S.E.2d 832, 839 (2017) (citation omitted); see also State v. Jackson, 258 N.C. App. 99,

 107, 810 S.E.2d 397, 402 (2018) (noting that the Court applied a de novo standard of

 review “because determining whether the State’s experts’ testimonies constituted

 expert opinions . . . was a question” of law.) (citing State v. Davis, 368 N.C. 794, 797-

 98, 785 S.E.2d 312, 314-15 (2015)). “Under a de novo review, the court considers the

 matter anew and freely substitutes its own judgment for that of the lower tribunal.”

 State v. Williams, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (citation and

 internal quotation marks omitted). However, whether the trial court erroneously

 admitted Ellington’s testimony is reviewed for an abuse of discretion. See Crocker v.

 Roethling, 363 N.C. 140, 143, 675 S.E.2d 625, 628-29 (2009) (citation omitted); see

 also State v. Turbyfill, 243 N.C. App. 183, 185-86, 776 S.E.2d 249, 252 (2015) (citation

 omitted). “Abuse of discretion results where the Court’s ruling is manifestly

 unsupported by reason or is so arbitrary that it could not have been the result of a

 reasoned decision.” Turbyfill, 243 N.C. App. at 185-86, 776 S.E.2d at 252 (citation

 omitted).

 2. Whether Ellington’s Testimony Constitutes Expert Testimony

¶ 27 The parties next dispute whether Ellington testified as an expert or gave a lay

 opinion. “Our Supreme Court . . . explained the threshold difference between expert
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

 opinion and lay witness testimony.” Broyhill, 254 N.C. App. at 485, 803 S.E.2d at 839

 (citing Davis, 368 N.C. at 798, 785 S.E.2d at 315). “[W]hen an expert witness moves

 beyond reporting what he saw or experienced through his senses, and turns to

 interpretation or assessment ‘to assist’ the jury based on his ‘specialized knowledge,’

 he is rendering an expert opinion.” Davis, 368 N.C. at 798, 785 S.E.2d at 315 (quoting

 N.C. Gen. Stat § 8C-1, Rule 702(a)). “Ultimately, ‘what constitutes expert opinion

 testimony requires a case-by-case inquiry’ through an examination of ‘the testimony

 as a whole and in context.’ ” Broyhill, 254 N.C. App. at 485, 803 S.E.2d at 839 (quoting

 Davis, 368 N.C. at 798, 785 S.E.2d at 315).

¶ 28 Here, Ellington testified about the general process for making a forensic or

 digital copy of electronic devices and specifically testified as to how he made a copy of

 Plaintiff’s electronic devices. Ellington’s testimony laid the foundation5 for a flash

 drive containing files from Plaintiff’s devices, demonstrating Plaintiff did not send

 the “topless photo” to anyone other than Defendant Clark. A review of Ellington’s

 testimony reveals that he testified not as an expert, but as a lay witness. Ellington

 testified as to what he “saw or experienced” in creating copies of Plaintiff’s devices

 and accounts. He did not interpret or assess the devices or accounts but explained the

 process he used for Plaintiff’s devices was one that he did daily.

 5 Defendant Barrett does not argue that the flash drive was improperly authenticated

 under N.C. Gen. Stat. § 8C-1, Rule 901.
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

¶ 29 Presuming arguendo Ellington testified as an expert, Defendant Barrett failed

 to demonstrate how this was prejudicial. See State v. Babich, 252 N.C. App. 165, 172,

 797 S.E.2d 359, 364 (2017) (“Where it does not appear that the . . . admission of

 evidence played a pivotal role in determining the outcome of the trial, the error is

 harmless.”) (quoting State v. Mason, 144 N.C. App. 20, 27-28, 550 S.E.2d 10, 16

 (2001)). Here, Plaintiff testified about the text messages, emails, and social media

 messages and postings. Ellington’s testimony was not “pivotal” in determining

 whether Defendants Clark and Barrett posted Plaintiff’s nude breasts on the

 internet; rather, it corroborated Plaintiff’s testimony that she sent the topless

 photograph to Defendant Clark. Therefore, we find no error in the trial court’s

 decision to allow Ellington to testify.

 B. Plaintiff’s IIED Claim

¶ 30 Next, Defendant Barrett contends the trial court erred by allowing Plaintiff’s

 claim for IIED to proceed “when the conduct is subsumed by other causes of action,”

 and by denying Defendant Barrett’s post-trial motion “because there was insufficient

 evidence for the claim of IIED to be submitted to the jury.” We disagree.

¶ 31 Whether Plaintiff’s IIED cause of action is subsumed by her other asserted

 torts is a question of law reviewed de novo. See Piazza v. Kirkbride, 246 N.C. App.

 576, 579, 785 S.E.2d 695, 698 (2016), modified, 372 N.C 137, 827 S.E.2d 479 (2019).

 “The standard of review of a ruling entered upon a motion for judgment
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

 notwithstanding the verdict is ‘whether, upon examination of all the evidence in the

 light most favorable to the nonmoving party, and that party being given the benefit

 of every reasonable inference drawn therefrom, the evidence is sufficient to be

 submitted to the jury.’ ” Everhart v. O’Charley’s Inc., 200 N.C. App. 142, 148-49, 683

 S.E.2d 728, 735 (2009) (quoting Branch v. High Rock Realty, Inc., 151 N.C. App. 244,

 249-50, 565 S.E.2d 248, 252 (2002)). Generally, “[i]f there is more than a scintilla of

 evidence supporting each element of the nonmoving party’s claim, the motion for

 directed verdict or JNOV should be denied.” Horner v. Byrnett, 132 N.C. App. 323,

 325, 511 S.E.2d 342, 344 (1999) (citation omitted); see also Norman Owen Trucking,

 Inc. v. Morkoski, 131 N.C. App. 168, 172, 506 S.E.2d 267, 270 (1998). “A scintilla of

 evidence is defined as very slight evidence.” Hayes v. Waltz, 246 N.C. App. 438, 442-

 43, 784 S.E.2d 607, 613 (2016) (citation omitted).

¶ 32 In determining whether the trial court erred in denying a JNOV, “we must

 take the plaintiff's evidence as true, and view all of the evidence in the light most

 favorable to him/her, giving him/her the benefit of every reasonable inference which

 may be legitimately drawn therefrom, with conflicts, contradictions, and

 inconsistencies being resolved in the plaintiff's favor.” Watson v. Dixon, 130 N.C.

 App. 47, 52, 502 S.E.2d 15, 19 (1998) (citations and internal quotation marks

 omitted).

 3. Election of Remedies
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

¶ 33 Defendant Barrett first contends the trial court erred in permitting Plaintiff to

 pursue her claim for IIED, “when the conduct is subsumed by other causes of action.”

 Defendant Barrett specifically contends that Plaintiff cannot recover under both IIED

 and another tort for the same conduct. Plaintiff argues Defendant Barrett failed to

 preserve this argument for appellate review, as Defendant “Barrett failed to plead

 election of remedies as an affirmative defense and raise this issue at trial.”

¶ 34 “One is held to have made an election of remedies when he chooses with

 knowledge of the facts between two inconsistent remedial rights.” Lamb v. Lamb, 92

 N.C. App. 680, 685, 375 S.E.2d 685, 687 (1989) (citation omitted). “The purpose of

 the doctrine of election of remedies is to prevent more than one redress for a single

 wrong.” Triangle Park Chiropractic v. Battaglia, 139 N.C. App. 201, 204, 532 S.E.2d

 833, 835 (2000) (citation omitted). The doctrine of “[e]lection of remedies is an

 affirmative defense which must be pleaded by the party relying on it.” North Carolina

 Federal Sav. & Loan Ass’n v. Ray, 95 N.C. App. 317, 323, 382 S.E.2d 851, 856 (1989)

 (citations omitted).

¶ 35 While Defendant Barrett contends Plaintiff’s IIED claim should not have been

 submitted to a jury because it was subsumed by other causes of action, Defendant

 Barrett did not raise the defense of election of remedies at trial or in her post-trial

 motion. Therefore, she may not raise this argument on appeal. Id.; see also State ex

 rel. Easley v. Rich Food Servs., Inc., 139 N.C. App. 691, 704, 535 S.E.2d 84, 92-93
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

 (2000).

 4. Sufficiency

¶ 36 Next, Defendant Barrett argues the trial court erred in denying her post-trial

 motion because Plaintiff did not present evidence to support each element of IIED.

 We disagree.

¶ 37 To state a claim for intentional infliction of emotional distress, a plaintiff must

 allege: “(1) extreme and outrageous conduct (2) which is intended to cause and does

 cause (3) severe emotional distress to another.” Norton v. Scotland Mem’l Hosp., Inc.,

 250 N.C. App. 392, 397, 793 S.E.2d 703, 708 (2017) (citation omitted). “Extreme and

 outrageous conduct is defined as conduct that is ‘so outrageous in character, and so

 extreme in degree, as to go beyond all possible bounds of decency, and to be regarded

 as atrocious, and utterly intolerable in a civilized community.” Id. (citation omitted).

 a. Severe Emotional Distress

¶ 38 Defendant Barrett contends Plaintiff failed to present evidence that she

 suffered from “severe emotional distress.” We disagree.

¶ 39 “[T]he term ‘severe emotional distress’ means any emotional or mental

 disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any

 other type of severe and disabling emotional or mental condition which may be

 generally recognized and diagnosed by professionals trained to do so.” Waddle v.

 Sparks, 331 N.C. 73, 83, 414 S.E.2d 22, 27 (1992) (citation and emphasis omitted).
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

 However, severe emotional distress does not require medical expert testimony.

 Williams v. HomEq Serv. Corp., 184 N.C. App. 413, 419, 646 S.E.2d 381, 385 (2007).

 Testimony of a plaintiff’s “friends, family, and pastors can be sufficient to support a

 claim. . . .” Id. (citations omitted).

¶ 40 Here, Plaintiff testified at trial that she cried hysterically, hyperventilated,

 and sought out a counselor at a local clinic in response to the conduct of Defendants

 Clark and Barrett. One of Plaintiff’s friends testified that Plaintiff was “very

 emotionally distraught and crying” on a weekly basis and that Plaintiff experienced

 anxiety. Although Plaintiff did not attend counseling for her anxiety on a regular

 basis, she testified this was out of fear that such treatment would negatively impact

 her probability of maintaining shared custody of her children. Taking the evidence

 in the light most favorable to Plaintiff, we hold there was more than a scintilla of

 evidence she suffered severe emotional distress as a result of the conduct of

 Defendants Clark and Barrett.

 b. Causation

¶ 41 Defendant Barrett further contends the trial court erred in denying her JNOV

 because Plaintiff failed to show a causal link between Defendant Barrett’s conduct

 and Plaintiff’s emotional harm.

¶ 42 Intentional infliction of emotional distress requires outrageous conduct that is

 intended to cause and does cause severe emotional distress. See Hogan v. Forsyth
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

 Country Club Co., 79 N.C. App. 483, 487-88, 340 S.E.2d 116, 119-20 (1986) (citation

 omitted).

 The tort may also exist where defendant’s actions indicate
 a reckless indifference to the likelihood that they will cause
 severe emotional distress. Recovery may be had for the
 emotional distress so caused and for any other bodily harm
 which proximately results from the distress itself.

 Id. (citation omitted). Stated differently, a defendant is liable for IIED when,

 he desires to inflict serious severe emotional distress or
 knows that such distress is certain, or substantially
 certain, to result from his conduct or where he acts
 recklessly in deliberate disregard of a high degree of
 probability that the emotional distress will follow and the
 mental distress does in fact follow.

 Dickens v. Puryear, 302 N.C. 437, 449, 276 S.E.2d 325, 333 (1981) (cleaned up).

¶ 43 Defendant Barrett specifically contends Plaintiff failed to show her conduct

 caused severe emotional distress because Plaintiff experienced “stroke-like

 symptoms” and was diagnosed with “migraines and stress” prior to the complained of

 conduct – “posing as Brian Bragg, posting a Craigslist ad, posting a Facebook ad,

 posting a picture on Kik,” all occurred after Plaintiff was hospitalized.

¶ 44 While the trial court noted Plaintiff’s emotional distress included “stroke-like

 symptoms,” it did not solely rely on such symptoms in finding Plaintiff produced

 evidence of severe emotional distress. Specifically, the trial court noted, “That

 Defendant Barrett’s conduct did cause severe emotional distress to Plaintiff in the
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

 form of anxiety, sleeplessness, and severe depression and physical manifestations,

 including stroke-like symptoms.” Plaintiff presented evidence that Defendant

 Barrett acted with a disregard to Plaintiff’s emotional state and that there was a high

 possibility of emotional distress in that, while Plaintiff and Defendant Clark were

 attempting reconciliation, Defendant Barrett asked Defendant Clark to partake in in

 vitro fertilization; Defendant Barrett had an affair with Defendant Clark while

 Plaintiff and Defendant Clark were still married; and Defendant Barrett allowed and

 potentially encouraged Plaintiff’s daughter to call her “Mommy.”

¶ 45 There is no dispute that Plaintiff experienced “stroke-like symptoms” prior to

 the complained of conduct; however, Plaintiff experienced anxiety, hyperventilation,

 and other emotional distress as a result of the conduct of Defendants Clark and

 Barrett. Plaintiff testified her emotional distress was caused by Defendants Clark

 and Barrett messaging her that they would do “everything in [their] power to make

 [her] life miserable” and by discovering fake “Liz Clark” Kik profiles soliciting “no

 strings attached” sexual intercourse. Thus, we hold there was more than a scintilla

 of evidence to find a causal link between the complained of conduct and Plaintiff’s

 emotional distress.

 c. Outrageous Conduct

¶ 46 Next, Defendant Barrett contends Plaintiff failed to present sufficient evidence

 of extreme and outrageous conduct by Defendant Barrett, because “[t]he evidence
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

 showed that Defendant Barrett did not engage with Plaintiff at all.” We disagree.

¶ 47 “[T]he initial determination of whether conduct is extreme and outrageous is a

 question of law,” to be determined by the court. Johnson v. Bollinger, 86 N.C. App.

 1, 6, 356 S.E.2d 378, 381 (1987) (citing Briggs v. Rosenthal, 73 N.C. App. 672, 676,

 327 S.E.2d 308, 311, cert. denied, 314 N.C. 114, 332 S.E.2d 479 (1985)). Conduct is

 considered extreme or outrageous “when a defendant’s conduct exceeds all bounds

 usually tolerated by decent society.” Watson, 130 N.C. App. at 52, 502 S.E.2d at 19

 (citation omitted). Conduct has also been deemed “extreme and outrageous when it

 is so outrageous in character, and so extreme in degree, as to go beyond all possible

 bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

 civilized community.” Chidnese v. Chidnese, 210 N.C. App. 299, 316, 708 S.E.2d 725,

 738 (2011) (internal quotation marks and citation omitted).

 The liability clearly does not extend to mere insults,
 indignities, threats, annoyances, petty oppressions, or
 other trivialities. The rough edges of our society are still
 in need of a good deal of filing down, and in the meantime,
 plaintiffs must necessarily be expected and required to be
 hardened to a certain amount of rough language, and to
 occasional acts that are definitely inconsiderate and
 unkind. There is no occasion for the law to intervene in
 every case where someone’s feelings are hurt. There must
 still be freedom to express an unflattering opinion . . . .

 Id. (citation omitted). In Watson v. Dixon, this Court found sufficient evidence of

 “extreme and outrageous behavior” where the defendant “harass[ed]” the plaintiff,
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

 and “frightened and humiliated [the plaintiff] with cruel practical jokes, which

 escalated to obscene comments and behavior of a sexual nature . . . .” 130 N.C. App.

 at 53, 502 S.E.2d at 20.

¶ 48 Viewing the evidence in the light most favorable to Plaintiff, and taking that

 evidence as true, the evidence tends to show that Defendant Barrett began a sexual

 relationship with Defendant Clark while he was married to Plaintiff; conceived a

 child with Defendant Clark while Plaintiff and Defendant Clark were attempting

 reconciliation; and sent at least one email to Plaintiff in which Defendant Barrett told

 Plaintiff she “was a bad mother, that [she was] uneducated . . . [she] was a bad wife,”

 and that Plaintiff came “from an unsuccessful family.” Further, both Defendant

 Barrett and Plaintiff testified Defendant Barrett resided with Defendant Clark and

 had access to the computer from which degrading messages were sent to Plaintiff.

 As Plaintiff presented more than a scintilla of evidence of “extreme and outrageous

 behavior,” we hold the trial court did not err in denying Defendant Barrett’s JNOV.

 C. Alienation of Affection

¶ 49 Next, Defendant Barrett contends the trial court lacked subject matter

 jurisdiction over the claim of alienation of affection and erred in denying her motion

 for JNOV because there was insufficient evidence of the claim.

 1. Subject Matter Jurisdiction

¶ 50 Defendant Barrett contends the trial court lacked subject matter jurisdiction
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

 to hear Plaintiff’s alienation of affection claim “[b]ecause alienation of affection is a

 transitory tort” and Plaintiff failed to show that the injury occurred in North

 Carolina. We disagree.

¶ 51 “Subject matter jurisdiction is conferred upon the courts by either the North

 Carolina constitution or by statute.” Harris v. Pembaur, 84 N.C. App. 666, 667, 353

 S.E.2d 673, 675 (1987) (citation omitted). “Jurisdiction of the court over the subject

 matter of an action is the most critical aspect of the court’s authority to act. Subject

 matter jurisdiction refers to the power of the court to deal with the kind of action in

 question.” Id. (citation omitted); see also Farquhar v. Farquhar, 254 N.C. App. 243,

 245, 802 S.E.2d 585, 587 (2017) (citation omitted). Whether a trial court is vested

 with subject matter jurisdiction is a question of law, reviewed de novo. Farquhar, 254

 N.C. App. at 245, 802 S.E.2d at 587 (citations omitted).

¶ 52 Alienation of affection is “a transitory tort because it is based on transactions

 that can take place anywhere and that harm the marital relationship.” Hayes, 246

 N.C. App. at 443, 784 S.E.2d at 613 (quoting Jones v. Skelley, 195 N.C. App. 500, 506,

 673 S.E.2d 385, 389-90 (2009)). “Establishing that the defendant’s alienating conduct

 occurred within a state that still recognizes alienation of affections as a valid cause

 of action is essential to a successful claim since most jurisdictions have abolished the

 tort.” Id. (citing Darnell v. Rupplin, 91 N.C. App. 349, 353-54, 371 S.E.2d 743, 746-47

 (1988)). However, “even if it is difficult to discern where the tortious injury occurred,
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

 the issue is generally one for the jury.” Id. (quoting Jones, 195 N.C. App. at 507, 673

 S.E.2d at 390); see also Darnell, 91 N.C. App. at 354, 371 S.E.2d at 747.

¶ 53 In Hayes, the plaintiff’s wife had an extramarital affair with the defendant in

 Cancun, Mexico. Id. at 440, 784 S.E.2d at 611. Thereafter, the plaintiff’s wife returned

 to the marital home in North Carolina, and the defendant returned to his residence

 in Indiana. Id. Thereafter, the plaintiff’s wife and the defendant “communicated . . .

 via email, telephone, and text messaging.” Id. The defendant later came to North

 Carolina and took the plaintiff’s wife to Indiana with him. Id. at 441, 784 S.E.2d at

 612. The defendant was found liable for alienation of affection and appealed. Id. On

 appeal, the defendant argued the trial court improperly denied his motion for JNOV,

 because “all of the sexual conduct [between the defendant and the plaintiff’s wife]

 occurred outside North Carolina.” Id. at 443, 784 S.E.2d at 613. This Court held,

 however, that there was more than a scintilla of evidence that “a wrongful and

 malicious act” causing the alienation of the plaintiff and his wife’s affection occurred

 in North Carolina. Id. at 444, 784 S.E.2d at 614-15.

¶ 54 Here, Plaintiff presented more than a scintilla of evidence that the alienation

 of Defendant Clark’s affection occurred in North Carolina. At the time Defendants

 Clark and Barrett met, Plaintiff resided in the couple’s marital home in North

 Carolina; Plaintiff discovered text messages between Defendants Clark and Barrett

 while Defendant Clark was in the couple’s marital home; and Plaintiff testified to a
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

 sexually explicit photograph Defendant Clark sent Defendant Barrett from the

 couple’s marital home. Further, although Defendant Barrett invoked her Fifth

 Amendment right whenever questioned about her sexual activity with Defendant

 Clark in North Carolina, “the finder of fact in a civil case may use a witness’s

 invocation of his fifth amendment privilege against self-incrimination to infer that

 his truthful testimony would have been unfavorable to him.” In re Estate of Trogdon,

 330 N.C. 143, 152, 409 S.E.2d 97, 902 (1991) (citing Fedoronko v. American Defender

 Life Ins. Co., 69 N.C. App. 655, 657-58, 318 S.E.2d 244, 246 (1984)). Therefore, we

 hold Plaintiff presented more than a scintilla of evidence that the tortious injury

 occurred in North Carolina.

¶ 55 Defendant Barrett further contends the aforementioned messages and

 photographs remain unauthenticated, and thus are not sufficient evidence to show

 the tortious conduct occurred in our State. However, this assignment of error is

 without merit as N.C. R. Evid. 901(b) permits the authentication of exhibits through

 testimony of a witness with personal knowledge. Here, Plaintiff testified she

 observed the text messages on Defendant Clark’s telephone, took a picture of said

 messages using her cellphone, and matched the phone number of “Jane S.” with that

 of Defendant Barrett. Accordingly, the trial court was vested with subject matter

 jurisdiction to hear Plaintiff’s alienation of affection cause of action.

 2. Sufficiency
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

¶ 56 Next, Defendant Barrett contends the trial court erred in denying her motion

 for JNOV, because there was insufficient evidence to support each element of

 alienation of affection. We disagree.

¶ 57 As discussed supra, “[a] motion for JNOV ‘should be denied if there is more

 than a scintilla of evidence supporting each element of the non-movant’s claim.’ ”

 Hayes, 246 N.C. App. at 442, 784 S.E.2d at 613 (quoting Shelton v. Steelcase, Inc., 197

 N.C. App. 404, 410, 677 S.E.2d 485, 491, disc. review denied, 363 N.C. 583, 682 S.E.2d

 389 (2009)). To succeed on an alienation of affection claim, a plaintiff must present

 evidence demonstrating “(1) a marriage with genuine love and affection; (2) the

 alienation and destruction of the marriage’s love and affection; and (3) a showing that

 defendant’s wrongful and malicious acts brought about the alienation of such love

 and affection.” Heller v. Somdahl, 206 N.C. App. 313, 315, 696 S.E.2d 857, 860 (2010)

 (citation omitted); see also Hayes, 246 N.C. App. at 443, 784 S.E.2d at 613 (citation

 omitted).

 a. Love and Affection

¶ 58 Defendant Barrett specifically argues that “[t]here was no genuine love and

 affection in Plaintiff’s marriage,” because “from the very beginning of their marriage,

 the parties had an unhappy marriage, full of infidelity and arguments.”

¶ 59 To succeed on an alienation of affection cause of action, “the plaintiff need not

 prove that he and his spouse had a marriage free from discord, only that some
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

 affection existed between them.” Nunn v. Allen, 154 N.C. App. 523, 533, 574 S.E.2d

 35, 42 (2002) (citing Brown v. Hurley, 124 N.C. App. 377, 477 S.E.2d 234 (1996)). “The

 marriage need not be a perfect one, but plaintiff’s spouse must have had ‘some

 genuine love and affection for him before the marriage’s disruption.” Heller, 206 N.C.

 App. at 315, 696 S.E.2d at 860 (emphasis in original) (quoting Brown, 124 N.C. App.

 at 381, 477 S.E.2d at 23). “Even if a plaintiff’s spouse retains feelings and affections

 for a plaintiff, an alienation of affections claim can succeed.” Id. at 316, 696 S.E.2d at

 861 (citation omitted).

¶ 60 Here, Plaintiff testified the couple would “try to keep intimacy alive even

 though” the couple often would be separated by distance due to Defendant Clark’s

 Military assignments. While married, Defendant Clark would visit Plaintiff on

 weekends, and the couple would text message and call each other often. Defendant

 Clark “would constantly say, I love you; are you coming over,” and the couple

 continued to have sexual intercourse after their separation. The couple had sexual

 relations when Defendant Clark visited North Carolina while studying at Fort

 Belvoir and continued to have sexual relations after Defendant Clark left the marital

 home. Defendant Clark texted Plaintiff, “I love you” when Plaintiff requested a copy

 of the video of the couple engaged in sexual intercourse.

¶ 61 Although Defendant Clark testified that he did not love his wife or that there

 were “problems with that love,” Plaintiff need only present “very slight evidence” of
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

 some love and affection to survive a motion for JNOV. See Hayes, 246 N.C. App. at

 442-43, 784 S.E.2d at 613 (“A scintilla of evidence is defined as very slight evidence.”

 (citation omitted)). Accordingly, we hold Plaintiff presented more than a scintilla of

 evidence of a genuine love and affection between Plaintiff and Defendant Clark.

 b. Alienation of Affection

¶ 62 Defendant Barrett further contends the trial court erred in denying her motion

 for JNOV because “Plaintiff failed to produce evidence that Defendant Barrett

 engaged in actionable unlawful conduct.”

¶ 63 “The alienation and destruction element [of alienation of affection] is proved

 by showing ‘interference with one spouse’s mental attitude toward the other, and the

 conjugal kindness of the marital relation.” Heller, 206 N.C. App. at 315-16, 696 S.E.2d

 at 860-61 (quoting Jones, 195 N.C. App. at 507, 673 S.E.2d at 390 (citation omitted)).

 “The loss” of affection “can be full or partial and can be accomplished through one act

 or a series of acts.” Id. at 316, 696 S.E.2d at 861 (citing Darnell, 91 N.C. App. at 354,

 371 S.E.2d at 747). “In the context of an alienation of affections claim, a wrongful and

 malicious act has been ‘loosely defined to include any intentional conduct that would

 probably affect the marital relationship.’ ” Hayes, 246 N.C. at 444, 784 S.E.2d at 613

 (quoting Jones, 195 N.C. App. at 508, 673 S.E.2d at 391 (citation omitted)).

¶ 64 Here, Plaintiff testified Defendant Clark’s behavior began to change after he

 met Defendant Barrett in that he did not travel home to North Carolina as often; he
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

 was short with her on the telephone; and he did answer his phone or text Plaintiff as

 often. When Plaintiff could not reach Defendant Clark over the phone, she “traced or

 tracked” his cellphone to Defendant Barrett’s room. Upon confronting Defendant

 Clark about the extramarital affair, Defendant Clark moved out of the couple’s

 marital home and the couple separated.

¶ 65 Plaintiff presented further evidence that Defendant Barrett knew Defendant

 Clark was married at the time the Defendants met. Regardless of this knowledge,

 Defendant Barrett chose to carry on a sexual relationship and conceive a child

 through in vitro fertilization with Defendant Clark. Defendants Barrett and Clark

 spoke on the phone, text messaged, and sent at least one sexually explicit photograph.

 Thus, we hold Plaintiff presented more than a scintilla of evidence regarding the

 malicious or wrongful alienation of affection.

 c. Wrongful and Malicious Causation

¶ 66 Defendant Barrett argues that her conduct did not cause the loss of affection

 between spouses because the couple’s extramarital affairs and arguments caused the

 couple to separate. “However, it is well established that while the defendant’s

 conduct must proximately cause the alienation of affections, this does not mean that

 the ‘defendant’s acts [must] be the sole cause of the alienation, as long as they were

 the controlling or effective cause.’ ” Hayes, 246 N.C. App. at 446, 784 S.E.2d at 615

 (citation omitted) (alteration in original); see also Nunn, 154 N.C. App. at 533, 574
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

 S.E.2d at 42 (citation omitted).

¶ 67 Upon meeting Defendant Barrett, Defendant Clark’s behavior within his

 marriage and toward his wife changed. Ultimately, Plaintiff and Defendant Clark

 separated, and Defendant Clark now resides with Defendant Barrett on the property

 he purchased with Plaintiff. Thus, Plaintiff presented a scintilla of evidence

 regarding causation.

 D. Damages

¶ 68 Defendant Barrett further contends the trial court erred in denying her motion

 for JNOV because “[t]he damages awarded to Plaintiff were improper and the

 evidence insufficient.”

¶ 69 The trial court has discretion to grant a new trial where the jury awards

 “[e]xcessive or inadequate damages appearing to have been given under the influence

 of passion or prejudice.” N.C. R. Civ. P. 59(a)(6). However,

 our appellate courts should place great faith and
 confidence in the ability of our trial judges to make the
 right decision, fairly and without partiality, regarding the
 necessity for a new trial. Due to their active participation
 in the trial, their first-hand acquaintance with the evidence
 presented, their observances of the parties, the witnesses,
 the jurors and the attorneys involved, and their knowledge
 of various other attendant circumstances, presiding judges
 have the superior advantage in best determining what
 justice requires in a certain case.

 Worthington v. Bynum, 305 N.C. 478, 487, 290 S.E.2d 599, 605 (1982).
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

 “Consequently, an appellate court should not disturb a Rule 59 order unless it is

 reasonably convinced by the cold record that the trial judge’s ruling probably

 amounted to a substantial miscarriage of justice.” Id.

¶ 70 In the context of alienation of affection,

 the measure of damages is the present value in money of
 the support, consortium, and other legally protected
 marital interests lost by her through the defendant’s
 wrong. In addition thereto, she may also recover for the
 wrong and injury done to her health, feelings, or
 reputation.

 Hutelmyer v. Cox, 133 N.C. App. 364, 373, 514 S.E.2d 554, 561 (1999) (quoting

 Sebastian v. Kluttz, 6 N.C. App. 201, 219, 170 S.E.2d 104, 115 (1969)). “[T]he

 gravamen of damages in [heartbalm] torts is mental distress, a fact that gives juries

 considerable freedom in their determinations.” Id. (quoting 1 Suzanne Reynolds,

 Lee’s North Carolina Family Law § 5.48(A) (5th ed. 1993)).

¶ 71 In Hayes, the trial court denied the defendant’s Rule 59 motion and determined

 the plaintiff presented sufficient evidence in that he lost the emotional and financial

 support of his wife and the marital home; suffered a diminished household income;

 and was “devastated” emotionally.” 245 N.C. App. at 452, 784 S.E.2d at 618. Here,

 Plaintiff testified she cried frequently, and her friend reported Plaintiff experienced

 anxiety. Due to the discovery of Defendants Clark and Barrett’s relationship,

 Plaintiff was hospitalized for “stroke-like symptoms.” Plaintiff is employed as a
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

 bartender/server, whereas Defendant Clark holds the rank of Major in the U.S. Army

 and, accordingly, has a higher earning potential. Plaintiff assumed half of the marital

 debt and cares for the couple’s two minor children, one of whom has special needs.

 Plaintiff further presented evidence of the loss of benefits provided to her as a spouse

 of an active duty servicemember, including medical and life insurance, and Defendant

 Clark’s pension. Accordingly, the trial court did not abuse its discretion in concluding

 $450,000 in compensatory damages was not excessive.

¶ 72 Defendant Barrett further contends the trial court erred in denying her post-

 trial motion where the trial court declined to instruct the jury on punitive damages

 for the alienation of affection claim. The trial court, here, instructed the jury

 regarding punitive damages for Plaintiff’s IIED claim. The trial court did not instruct

 the jury on punitive damages in connection with alienation of affection, because,

 under Oddo v. Presser, 358 N.C. 128, 592 S.E.2d 195 (2004), there must be proof of

 sexual relations before the date of physical separation for punitive damages. Contrary

 to Defendant Barrett’s contention, there is no requirement of pre-separation sexual

 intercourse to recover punitive damages for IIED.

¶ 73 Defendant Barrett also argues that the trial court failed to make findings of

 fact regarding all the factors enumerated in N.C. Gen. Stat. § 1D-35(2). However, the

 jury is not mandated to consider all factors enumerated in Section 1D-35. The plain

 language of the statute allows the trier of fact to consider the factors, but it is not a
 CLARK V. CLARK

 2021-NCCOA-653

 Opinion of the Court

 requirement. Accordingly, we hold the trial court did not err in denying Defendant

 Barrett’s post-trial motion regarding damages.

 III. Conclusion

¶ 74 After careful review of the record and applicable law, we hold the trial court

 properly exercised subject matter jurisdiction over Plaintiff’s alienation of affection

 claim and did not err in either the admission of Ellington’s testimony or denial of

 Defendant Barrett’s motion for JNOV.

 NO ERROR AND AFFIRMED.

 Judges TYSON and HAMPSON concur.